[PHILADELPHIA, FEBRUARY 7, 1837.].

REESIDE *against* KNOX and Another.

IN ERROR.

An order drawn by a contractor on the Post Master General, in the following words :

" Sir,—On the first day of January, 1836, pay to my order $5000, for value received, and charge the same to my account, for transporting the U. S. Mail, and oblige

Your friend, J. R."

Was held not to be a negotiable bill of exchange, so as to entitle the holder to sue in his own name.

In the District Court for the City and County of Philadelphia, John Knox, and James Boggs, trading together under the firm of Knox & Boggs, brought an action on the case, to March term, 1836, against James Reeside. The writ was returnable on the first Monday in May.

On the 9th of May, 1836, the plaintiffs filed a copy of the instrument in writing, on which the suit was brought, in the words and figures following, viz.—

" Copy of the instrument of writing whereon the above action is founded, viz:

Dollars 5000.　　　　　　　　　　　Washington, 18th April, 1835.
Sir,
　　On the 1st day of January, 1836, pay to my order, five thou-
VOL. II.　　　　　　　　　　30

(Reeside *v.* Knox.)

sand dollars, for value received, and charge the same to my account for transporting the U. S. Mail, and oblige

Your friend,          JAMES REESIDE.

To Hon. Wm. T. Barry,
          Post Master General.

Accepted, provided the drawer shall perform his contract.
R. C. MASON, Treasurer.

Endorsed,
     JAS. REESIDE,
     ABRAM. HORBACK,
     D. B. M'NAIR.

Protested January 4, 1836.   See copy ) Pay George Thomas, Esq.
     of protest annexed, marked A."   )      Cashier, or order."

On the 11th of May, an affidavit of defence was filed as follows:

" James Reeside, the defendant in this case, on oath declares, that he has a just defence against the whole of the said plaintiffs' demand, which is founded, as appears by the copy of the instrument filed by the plaintiff, on this deponent's draft on the Post Master General of the United States, chargeable as the said draft declares, to the drawer's account, for transporting the United States mail. Deponent was a contractor with the Post Master General for transporting the mail; and, as he believed, justly entitled to draw the said draft against the amount due to him on the said account, as was then usual under such contracts. The draft was accordingly drawn the 18th day of April 1835, payable the first day of January 1836, and accepted by a written acceptance on the face thereof, by the Treasurer of the General Post Office Department, *provided that the drawer shall perform his contract;* which proviso or condition was part of the acceptance. Thus accepted, it was endorsed by this deponent to Abram Horbach, who was concerned with deponent in transporting the mail, and who had full knowledge of all the circumstances connected with the contract, the drawing of the said draft, and with the conditional acceptance thereof on the face as aforesaid. Before the said draft fell due, another Post Master General suspended payments to this deponent, on the plea, as he understands, of his non-compliance with his contract; so that not only has payment of the said draft been refused according to the acceptance, but no money, credit or allowance whatever has been paid, made or credited to this deponent by the Post Master General; and moreover this deponent's instances for settlement of his accounts with the said Post Master General have been refused; and a large sum due to deponent for transporting the mail, is withheld from him by the Post Master General, far beyond

the amount of the draft in question. Of said refusal to pay the draft, deponent apprised Abram Horbach long before it was due; and he also gave general notice of these circumstances to the Western Bank of Philadelphia, at which bank the said draft was deposited for collection. Whether it was transferred to the plaintiffs for a valu‌able consideration, this deponent is not informed; but he has reason to believe, that they hold it as agents for either Abram Horbach or his immediate endorser. Deponent is moreover advised, that besides the defence, the nature and character of which are before stated, he has other ground of legal exoneration arising out of the incapa‌city of the Post Master General to give such acceptances; and the instrument in question not being negotiable or a bill of exchange.

JAMES REESIDE.

Sworn and subscribed before me,
　this 11th day of May.
WILLIAM MILNOR,<br>Alderman."

On the 21st of May, the Court granted a rule on the defendant to show cause, why judgment should not be entered for want of a sufficient affidavit of defence; which rule after argument was made absolute on the 2d of July.* On the 6th of July, the damages were assessed by the prothonotary at $5411 79.

The defendant then took a writ of error; and on the return of the record, assigned the following errors :

1. " The judgment deprived the plaintiff of trial by jury.
2. It adjudged the writing in question to be a bill of exchange.
3. It adjudged a chose in action to be suable contrary to law.
4. It adjudged it to be unconditional."

Mr. *C. J. Ingersoll*, for the plaintiff in error.

1. The act of the 28th of March, 1835, authorising judgment to be given by the District Court for want of an affidavit of defence, is one of the most important laws which have been passed for many years. It was intended to be a legislative amendment of an old rule of court. I do not dispute the constitutionality of the act: properly construed and administered, it will be found a wise and judicious alteration. The old rule was always considered the *ultima ratio* of judicial legislation. *Vanatta* v. *Anderson*, (3 *Binn.* 417.) In *Snyder* v. *Bachman*, (8 *Serg. & Rawle*, 336,) the power of the court to make rules for the regulation of its practice was admitted; but there

* For the argument in the District Court, and the opinion of that court on the above rule, see 1 *Miles*, 294, (*Knox* v. *Reeside*.)

(Reeside *v.* Knox.)

is a *proviso* that the trial by jury be not interfered with.   *Barry* v.
*Randall*, (3 *Binn.* 277.)   *Reist* v. *Heilbrenner*, (11 *Serg. & Rawle*,
131.)   What the legislature intended was, that upon a positive affi-
davit setting forth the nature and character of his defence, there
should be an end to the power of the court to decide upon it.   The
power is by a supplementary act, lodged in the hands of a single
judge, and should be exercised very abstemiously.   It never was
meant that he was to try the cause without a jury.   But if such
were the intention of the legislature, this court would not enforce it,
because it would be in violation of the constitution ; which declares
that the right of trial by jury, shall remain as heretofore.   In twenty
three out of the twenty-four constitutions, governing the several states
of the Union, this provision is to be found in almost the same words.
The only exception is Louisiana.   The case of *Emerick* v. *Harris*,
(1 *Binn.* 416,) settles the question as to the constitutionality of an
act of assembly interfering with the trial by jury.   3-*Blackst. Comm.*
349, 379, 386.   *Debates of the Pennsylvania Convention*, 27, 56, 61,
86, 108, 159, 162.   *Rose* v. *King*, (5 *Serg. & Rawle*, 241.)

2. This is not a bill of exchange, properly speaking ; or at all
events, not such as to authorise the holders to sue in their own names.
*Chitty on Bills.*   2 *Blackst.* 466.   3 *Kent's Com.* 73-4.   *Pardessus on
Bills.*   *Corser* v. *Craig*, (1 *Wash. C. C. R.* 424.)   *Richards* v. *Rich-
ards*, (2 *Barn. & Adolph.* 477 ;  S. C. 22 *Eng. Com. Law Rep.* 119.)
This instrument was drawn at Washington ; and the law of that
place is to govern the construction, though the law of Pennsylvania
is to control in respect to the remedy.   This is not a *foreign* bill,
having been drawn at Washington, and accepted and payable there.
The affidavit states a case in which, according to the authorities,
there was a plain defence.   *Chitty on Bills*, 220, 558.   *U. States* v.
*Robinson*, (9 *Peters*, 319.)   *Jackson* v. *Tilgman*, (1 *Miles*, 35.)   *Law-
rence* v. *Dougherty*, (5 *Yerger*, 435.)   *Cook* v. *Irwin*, (5 *Serg. &
Rawle*, 492.)   2 *Starkie's Rep.* 330.   It is settled that if drawn upon
a contingency, it is not good as a bill.   *Chitty*, 152.   *M'Cormick* v.
*Trotter*, (10 *Serg. & Rawle*, 94.)   *Cook* v. *Satterlee*, (6 *Cowen*, 108.)
*Alvez* v. *Hodgdon*, (7 *Term Rep.* 242.)   *Palmer* v. *Pratt*, (2 *Bing-
ham*, 185 ;  S. C. 9 *Eng. Com. Law Rep.* 373.)   *Jocelyn* v. *Lassere*,
(*Fortescue*, 281 ;  S. C. 10 *Mod.* 294, 316.)   *Haddan* v. *Lynch*, (2
*Ld. Raym.* 1563.)   2 *Blackst. Rep.* 782.   *Carlos* v. *Fancourt*, (5
*Term. Rep.* 482.)   *Jenny* v. *Hurd*, (2 *Ld. Raym.* 1361 ;  S. C. 8
*Mod.* 265 ; 1 *Str.* 591.)   *Banbury* v. *Lassalle*, (2 *Str.* 1211.)   *William-
son* v. *Bennet*, (2 *Camp.* 418.)   Granting however, that this was a
bill of exchange and a negotiable instrument, it was drawn and
accepted under special circumstances, and the conditional accep-
tance determines the whole character of the bill.

Mr. *Meredith*, for the defendant in error.

1. The sufficiency of the affidavit, must necessarily be considered

(Reeside *v*. Knox.)

and determined by the court. There is nothing here to raise the constitutional question. There is not a disputed fact on the record. If there be any constitutional difficulty, it must be in the way of the act itself. The decisions under the arbitration law, and upon the jurisdiction of justices of the peace, settle that question. *Thompson* v. *White*, (4 *Serg. & Rawle*, 13.) *M'Dowell* v. *Schell*, (6 *Serg. & Rawle*, 240.) The defence set up in the affidavit is obviously insufficient; and unless the court has authority to decide on the sufficiency of an allegation of law in an affidavit of defence, the provision in the act is worthless. Here the affidavit admits that the money was due. The opinion of the court upon the affidavit, is to be considered in the same light, as a charge to the jury upon the law.

2. Was this " an instrument of writing for the payment of money," which authorised a suit in the names of Knox & Boggs? It is said that a bill of exchange must have three requisites. 1st. Certainty of time. 2d. That it be for payment of money. 3d. That it be addressed to a certain person. Here the time was fixed and certain. The objection is, that the drawee is directed to charge it to a particular account. It is to be remarked that it is not payable out of a particular fund. The question whether a paper is a bill of exchange or not, is to be decided from what appears on the face of it, not from extraneous circumstances. *Leeds* v. *Lancashire*, (2 *Campbell*, 203.) *Haussolier* v. *Hartsinck*, (7 *Term Rep.* 729.) *Bell* v. *Davidson*, (3 *Wash. C. C. R.* 329.) *Laing* v. *Barclay*, (1 *Barn. & Cres.* 398; S. C. 2 *Dow. & Ryl.* 530; 8 *E. C. Law Rep.* 108.) *Gray* v. *Donahue*, (4 *Watts*, 400.) In 4th *Petersdorff's Abr.* tit. *Bills. and Notes*, all the cases are collected, and establish the above position. The case of the *U. States* v. *Robinson*, (9 *Peters*, 319,) is totally different from this. That was the case of an *assignment* of a claim on government, not of a bill of exchange. *Banbury* v. *Lassalle*, (2 *Strange*, 1211,) seems to have been misunderstood. The jury found on the ground that the bill was not for value received. The other point was not decided. Here the acceptance only creates the contingency. If the drawee of a bill be an infant or *feme covert*, it is not the less a bill of exchange. The government makes contracts daily, and why should it not be a party to a bill. There is nothing in the law which forbids a conditional acceptance. The drawer is responsible on his original contract, if the acceptance should not be satisfactory. *Molloy* v. *Delves*, (7 *Bing.* 428; S. C. 20 *Eng. Com. Law Reps.* 190.) *Smyth* v. *Hawthorn*, (3 *Rawle*, 355.) *Jones* v. *Ryde*, (5 *Taunt.* 488; S. C. 1 *Eng. Com. Law Reps.* 166.) *Milne* v. *Prest*, (1 *Holt*, 181; S. C. 3 *Eng. Com. Law Reps.* 67.) *Swan* v. *Cox*, (1 *Marshall*, 176; S. C. 4 *Eng. Com. Law Reps.* 333.) *Stephens* v. *Wilkinson*, (2 *Barn. & Adol.* 320; S. C. 22 *Eng. Com. Law Rep.* 86.) *Highmore* v. *Primrose*, (5 *Maule & Selw.* 65.) *Dodd* v. *Edwards*, (2

(Reeside *v.* Knox.)

*Carr. & Payne*, 602 ; S. C. 12 *Eng. Com. Law Reps.* 283.) *U. States* v. *Barker*, 4 *Wash. C. C. R.* 464.)

Mr. *Ingersoll* in reply.

It is said on the other side, that it appears by the affidavit, that the money was *due* to the drawer of the bill. It is well known that Mr. Reeside was an extensive contractor. His accounts with the department were unsettled. Money may have been *due* to him, though not payable in the course of business. Paper drawn by a public agent is not considered as commercial paper in the books; upon its face it is not sueable. The philosophy of bills excludes all uncertainty. The act does not put the case of affidavits of defence upon the same footing as a charge to a jury. The power of the court is limited. Where it is apparent on the face that the defence is fraudulent or impossible, it is the same as if there was no affidavit; but if there is an honest and apparently fair affidavit, the court ought to send the case to a jury.

The opinion of the Court was delivered by

Gibson, C. J.—The first and more important point is disposed of in the opinion of the court in *West* v. *Simmons ;* and I shall confine myself to the question, whether the affidavit disclosed an effective defence, or, to express it differently, whether the instrument filed as the cause of action, is a valid bill of exchange. If it be not, the defendant below is not liable.

It is certainly not an insuperable objection to a bill, in every case, that the government is a party to it. In *Dugan* v. *The United States*, (3 *Wheat.* 172,) it was held that the government might recover as the holder; and the principle seems to have been conceded in *The United States* v. *Barker's Administatrix*, (4 *Wash. C. C. Rep.* 468.) Neither would an objection lie to the form of the bill in the present instance, were the drawee an individual; for the direction to charge the drawer's account, is only an indication of the means of reimbursement. I lay that circumstance, and the conditional acceptance of the treasurer, out of the question, and consider the bill as if it were drawn and accepted absolutely. Now an indispensable element in the constitution of these instruments, is an absolute and entire freedom from contingency of payment depending on the happening of an event, or the solvency of a fund. But in contemplation of law, is not every bill on government drawn on a fund, whether it be so expressed or not ? It is a matter of public notoriety, that government accepts for no more, and is bound for no more, whatever be the form of acceptance, than it has in its hands; and that it treats a bill drawn on it as no more than an assignment or order of transfer. In the present instance, the condi-

(Reeside v. Knox.)

tion expressed in the treasurer's acceptance, indicated no more than the law would have implied without it. The officer, being a public agent, would not have been liable on an absolute acceptance; and the government itself would not have been liable, for it gave him no authority to bind it. The public officers may, doubtless, draw or receive bills to facilitate the business of their departments; but they would transcend their power, did they attempt to pledge the responsibility of the government as a merchant or banker in the money market. Though it may doubtless draw bills for its convenience, it is not a dealer in exchange; nor does it incur collateral responsibilities for its creditors. Its acceptance is no more than a recognition of the instrument as a transfer of credit, or an assignment of the funds in its hands; and it mingles in the transactions of its creditors no further. But the payee in a valid bill of exchange, has no concern with the question of funds. He takes an absolute order for payment; and if he sees proper to take a conditional acceptance of it, that is a subsequent matter of his own arrangement. An ordinary drawee accepts sometimes without funds, but the government never. Now in the composition of a bill of exchange, there must be a drawer, a drawee, and a payee, capable, on the face of the bill, of contracting personally; for these instruments are based on personal credit, and not on the credit of a fund. But either of these may be actually disabled by infancy or coverture, without impairing the existence of the bill as an instrument, or affecting the mutual recourse of the other parties; and the reason is, that it would injure the circulation of negociable paper, were an inquiry into such facts necessary to be made by one who takes it in the course of his business for what it purports to be. But in the case of the government, which never enters into transactions as an individual, the payee is bound to take notice of its course. The event on which payment is to depend, is one of *public notoriety*, which has frequently been held an extrinsic cause of certainty, sufficient to remove an intrinsic uncertainty from the face of the bill, and which must be equally operative to introduce one. Had the order been payable, in terms, at the drawer's fulfilment of his contract, no one would have asserted it to be a valid bill of exchange: and yet no one would have been misled, in respect to its legal effect, by the want of such terms. He who takes a bill on a public department, expects it to be paid no otherwise than out of the funds of the drawer. The public agent is never liable on his acceptance; and the government itself enters into no contract of suretyship. It is impossible, then, to say that the legal effect of a bill, without these terms, but coupled with the notoriety of the course of public transactions, is different from the legal effect of a bill which contains them. Though I have found no case like the present, it seems entirely clear that the order was not negociable; and it might admit of a doubt, whether the defendant could be called on before the

(Reeside *v.* Knox.)

plaintiff had filed a cause of action. But an affidavit was actually made, and the judgment was certainly irregular.

Judgment reversed.