[PHILADELPHIA, JANUARY 2, 1841.]

## HORBACK *against* REESIDE.

The defendant, who was a contractor for carrying the mail, became indebted to the plaintiff and others, who were sub-contractors, and drew a bill on the post-master general, payable to his own order, for a certain sum, to be charged to his account; which bill he endorsed, and handed it to A., one of the sub-contractors, and told him that it was good; that he received the drafts as his pay, and gave them as such. The bill was endorsed by the plaintiff, and by A.; and was discounted, and the proceeds received by A., who paid part to the sub-contractors who were present, and retained the balance for payment of the others. The defendant was also one of the sub-contractors. Payment of the bill was refused at the department, and the plaintiff was compelled to pay it. *Held*, that he might recover in indebitatus assumpit for money paid &c., for the defendant; and that A. was a competent witness for him.

THIS case came before the court upon a motion for a new trial.

The action was assumpsit, brought by Abraham Horback to the use of Knox, Boggs, & Co., against James Reeside. The declaration contained the common money counts.

On the trial before ROGERS, J. at a Court of Nisi Prius, held in Philadelphia on the 22d of Nov. 1839, the plaintiff's counsel opened that the action was brought to recover money paid by the plaintiff for the use of the defendant.

It appeared that the defendant, who was a contractor for carrying the mail, had drawn a bill upon the Post Master General for $5000, which had been endorsed by the plaintiff and others, and which, after having been discounted for the plaintiff, had been refused payment at the department; and the plaintiff had been compelled to take it up.

The bill was in the following words:

"$5000.                          Washington, 18th April, 1835.
Sir,
    On the 1st day of January, 1836, pay to my order five thousand

dollars, for value received, and charge the same to my account for transporting the U. S. mail, and oblige

Your friend,

JAMES REESIDE.

To Hon. W. T. Barry, Post Master General."

" Accepted, provided the drawer shall perform his contract.

R. C. Mason, Treasurer."

Endorsed—" James Reesides,
          Abram. Horback,
          D. R. M'Nair."

The counsel for the plaintiff offered in evidence the deposition of Downing R. M'Nair, taken at Pittsburgh, which was objected to by the counsel for defendant; but admitted by the judge.

The witness testified as follows:

" Abraham Horback and others were sub-contractors for carrying the mail under James Reeside from Bedford to Pittsburgh, Pennsylvania. James Reeside became indebted to Abraham Horback and others nearly five thousand dollars. The interest of the sub-contractors extended from Pittsburgh to Wheeling, Virginia. This amount was due for carrying the mail, as ascertained by settlement, for two previous quarters to 1st January, 1836, between Reeside and Abraham Horback and others, sub-contractors, for which a draft was given to me, at Washington city, by James Reeside, sometime in October, 1835, for $5000, drawn by James Reeside on Hon. Wm. T. Barry, then postmaster-general, and accepted by R. Mason, treasurer, payable on the first of January, 1836, which draft was handed to Abraham Horback; and Horback paid the deponent four thousand nine hundred and seven dollars and fifty cents on the twenty-first of October, 1835. The discount of ninety-two dollars and fifty cents was taken off the draft, which left the balance aforesaid in my hands, to be applied to the payment of Abraham Horback and others, agreeably to their respective claims. ' I applied this money to the payment of a portion, and the others held me accountable. There was a small balance of the draft beyond the amount ·to be paid to the sub-contractors, which was paid by me to said James Reeside. I was a partner in the sub-contract at this time from Bedford to Wheeling. ' I don't recollect in whose favour the draft was drawn. It was endorsed James Reeside·when handed to the deponent." Cross-examined. " Mr. Horback was in Washington city at the time, but was not present when the draft was given. The draft was given on account of the various sub-contractors, of whom deponent was one, and Abraham Horback another. Deponent was not originally interested, but became so subsequently by

(Horback v. Reeside.)

purchase, and at the time this draft was given was one of the sub-contractors. The other sub-contractors were Noah Mendell, John Graham, Robert Graham, John W. Weaver, Jacob Milton, James Burns, James Vaugh. The sub-contractors carried the mail from Bedford to Pittsburgh. We were called the Western Company. I should say they had the line for carrying the mail from James Reeside from Bedford to Wheeling. James Reeside and the Good Intent Company had the balance of the line east. Deponent does not know any of the members of the Western Company having interest in any of the lines east of Bedford. When Mr. Reeside handed the draft to me he said it was good, and that he had the drafts on the department, and that he considered them good as money. He received them as his pay, and he could give them as such. I don't recollect that he said he would give us that or nothing. He said that we could get it discounted at some banks, I forget which. My name was upon the draft. I don't recollect whether it was put upon it before Mr. Horback's or not. Mr. Horback took the draft to get it discounted, and brought the proceeds to me after it was discounted. The proceeds of the draft were applied to the sub-contractors, being distributed among those that were present; and others I held myself accountable to. I don't know that I have any interest in this suit. My name is on the draft, and whether I may become interested, I cannot tell."

The plaintiff's counsel then called James Mason, who testified as follows:

" I have seen that draft before. I saw it in the possession of Abraham Horback. It was discounted in the Western Bank upon the indorsement of Knox & Boggs. Mr. Horback has not paid the whole of it; the whole of it has not been paid. The assignees of Knox & Boggs have yet a claim upon the draft. Horback got the money himself from the Western Bank on Knox & Boggs's indorsement. When matured it was not paid, and the bank called on Knox & Boggs to pay it. The amount paid by them was, five thousand and seven dollars and seventeen cents. The seven dollars and seventeen cents was for charges, which were paid by Knox & Boggs. The draft was taken up by them on the 9th of January, 1836. On the 29th of January, 1836, they received from Horback three thousand dollars; and on the 14th of April, 1836, two thousand dollars; and on the 20th of April they paid out of this money, at Horback's request, a bill amounting to two hundred and thirteen dollars and ninety cents. The request was made and acceded to at the time the payment was made. Knox & Boggs have another claim against Horback. The claim of seven dollars and seventeen cents, charges on draft, Horback has never paid."

The plaintiff's counsel then gave in evidence the following receipt:

"Received from D. M'Nair $327 65, being the balance of the draft dated 18th April, 1835, due 1st January, 1836, for $5000, drawn by me on post-master-general, and discounted in Western Bank of Philadelphia. The balance paid over by M'Nair to owners of Good Intent and Telegraph stage lines west of Bedford.

(Signed)            JAMES REESIDE.

Washington City, October 29, 1835."

The plaintiff's counsel also read in evidence the affidavit of the defendant, in an action brought upon the same draft by Knox & Boggs *v.* Reeside, in the following words:

"James Reeside, the defendant in this case, on oath, declares that he has a just defence against the whole of the said plaintiff's demand, which is founded, as appears by the copy of the instrument filed by the plaintiff, on this defendant's draft on the post-master-general of the United States, chargeable, as the said draft declares, to the drawer's account, for transporting the United States mail. Deponent was a contractor with the post-master-general for transporting the mail, and, as he believed, justly entitled to draw the said draft against the amount due to him on the said account, as was then usual under such contracts. The draft was accordingly drawn the 18th day of April, 1835, payable the first day of January, 1836, and accepted by a written acceptance on the face thereof, by the treasurer of the general post office department, provided that the drawer shall perform his contract: which proviso or condition was part of the acceptance. Thus accepted it was endorsed by this deponent to Abram. Horback, who was concerned with deponent in transporting the mail, and who had full knowledge of all the circumstances connected with the contract, the drawing of the said draft, and with the conditional acceptance thereof on the face, as aforesaid. Before the said draft fell due, another post-master general suspended payments to this deponent, on the plea, as he understands, of his non-compliance with his contract; so that not only has payment of the said draft been refused according to the acceptance, but no money, credit, or allowance, whatever, has been paid, made, or credited to this deponent, by the post-master-general: and moreover, this deponent's instances for settlement of his accounts with the said post-master-general have been refused, and a large sum, due to deponent for transporting the mail, is withheld from him by the post-master-general, far beyond the amount of the draft in question. Of said refusal to pay the draft, deponent apprised Abram. Horback, long before it was due; and he also gave general notice of these circumstances to the Western Bank of Philadelphia, at which bank the said draft was deposited for collection. Whether it was transferred to

(Horback *v.* Reeside.)

the plaintiffs for a valuable consideration, this deponent is not informed; but he has reason to believe that they hold it as agents for either Abraham Horback, or his immediate indorser. Deponent is moreover advised, that besides the defence, the nature and character of which are above stated, he has other ground of legal exoneration, arising out of the incapacity of the post-master-general to give such acceptances: and the instrument in question not being negotiable, or a bill of exchange."

The draft and protest thereof were also given in evidence.

The jury, under the direction of the judge, found a verdict for the plaintiff for the sum of $6178 89, subject to the opinion of the court upon all the points of law in the case.

Mr. *Badger* now argued in support of the motion for a new trial.

1. The case of *Knox* v. *Reeside,* (2 *Whart. Rep.* 233,) decided that this draft was not negotiable, and the drawer not liable upon it. On the merits it is proved that Reeside took and gave it for what it was worth.

2. These sub-contractors (of whom Reeside was one) were joint contractors in carrying the mail. They were partners as respected each other, and therefore account-render should have been brought.

3. M'Nair was not a competent witness. He is liable to Horback if the latter should fail in this suit. Besides, according to his testimony, he holds money for some of the other sub-contractors which he has refused to pay.

Mr. *Meredith,* contra.

1. This action is for money paid by the plaintiff to the defendant's use. The plaintiff is not to be prevented from recovering because the defendant passed to him in payment of his debt a paper which turned out not to be a bill of exchange.

2. The sub-contractors might be partners among themselves; but as between them and Reeside it was not a partnership. They were his agents, and he became indebted to them for services.

3. M'Nair had no interest. He paid part of the money to subcontractors, and is liable to the others. Reeside ratified it by accepting his share. If Horback fails here, he never can go back on M'Nair. He had the express consent of Reeside and Horback in paying the money.

The opinion of the court was delivered by

Sergeant, J.—The former suit of *Knox & Boggs* v. *Reeside,* (2 *Whart.* 233,) failed because the bill being drawn on the government,

(Horback v. Reeside.)

was not a negotiable instrument. This suit is free from that objection, being *indebitatus assumpsit* for money paid to the defendant's use by the plaintiff. The facts appear to be, that Reeside, being the contractor for carrying the mail from Philadelphia, to Wheeling, became indebted to the plaintiff and others as sub-contractors for carrying the mail on the western part of the route, and in order to pay them gave them the bill drawn by himself in his own favour, and endorsed by him, saying it was good, that he had drafts on the department, and that he considered them as good as money; that he received them as his pay, and gave them as such, and that they could get it discounted at some bank. In order to obtain this discount, the plaintiff and others endorsed and received the money, (deducting the discount,) which was distributed among the sub-contractors present, (of whom the defendant was one) and the plaintiff held himself accountable to the others. Afterwards, the draft not being paid, the plaintiff was obliged to refund the money to Knox and Boggs who had taken it up.

The objection to the recovery is, that the plaintiff was a partner with the defendant, that the draft was received for the account of all concerned, and that account render only lay, and not assumpsit. Though the sub-contractors were partners amongst themselves as to the sub-contract, they were not so with the defendant as to the department, or as to the money due on the defendant's contract with them to carry the western mail. The defendant alone made the contract with the Post Office Department, and became the debtor to these defendants for carrying that portion. If he gave in payment of his debt a security which turned out to be unavailable, he is still liable to them; and if the money received on such security turned out to be no payment, and the parties receiving it have been under the necessity of refunding it; that is so much money paid to the defendant's use: such seems to have been the transaction. The defendant passed to these parties in payment a bill which turned out to be irrecoverable by them, and he is now liable for the debt, and if the plaintiff has paid it to his creditors, at his request, the defendant is liable for reimbursement. The defendant, according to the evidence, gave the draft to M'Nair on behalf of the sub-contractors to pay them, and the defendant himself received a part of it as such; the plaintiff having done so cannot recover it back from the sub-contractors, and is moreover liable, so far as appears to us, to those who remain unpaid, as he received the money expressly for their use. There is, therefore, no objection to the testimony of M'Nair, one of the sub-contractors, on the ground of interest. He could not be sued by Horback to recover back this money, even though Horback should fail in this suit. Horback has chosen to receive it and pay it over without reservation or stipulation, and must take the risk of getting it from Reeside.

(Horback *v.* Reeside.)

On the whole, Reeside is the debtor, and justly bound to pay, and we think this form of suit maintainable under the circumstances of the case.

Rule for new trial discharged.