THIS was an action of assumpsit by William C. Conine against The Junction and Breakwater Railroad Company in the Superior Court in and for New Castle County, and came up on a case stated and the following facts and the question of law thereupon reserved by consent of counsel, for a hearing before all the Judges in this Court, and was heard before Bates, Chancellor, Gilpin, Chief Justice, and Wootten and Wales, Justices, Houston, Justice, not sitting, being a stockholder, director and the President of the company.
On the second day of July, 1860, the defendant, a corporation of the State, through its Treasurer, Hiram W. McColley, drew a bill of exchange or draft of that date, on Messrs. France, Broadbent Co., of the City of Baltimore, for the sum of $6,900.00 payable eighteen months after date, which is in the following words and figures, that is to say,
 "Office of the Junction and Breakwater R. R. Company.
 Milford, Del., July 2nd, 1860.
 Dolls. 6,900.00.
GENTLEMEN, — Eighteen months after date please pay to my own order, six thousand nine hundred dollars, for value received, that being the amount which will be due from said State of Delaware to the Junction and Breakwater Railroad Company, January 1st, 1862, out of the semi-annual instalments, which will on that day, be due *Page 290 
to said State from Richard France under the provisions of the act of the General Assembly of said State, entitled "An Act for the encouragement of Internal Improvements in the State of Delaware," passed at Dover, January 26th, 1859, and your receipt endorsed hereon for the share of said corporation of said instalment, shall be good against said Corporation.
 H. W. McColley.
 To Messrs. France, Treasurer of the Junction Breakwater Broadbent Co., R. R. Co. Baltimore, Md.
That said bill or draft was afterward endorsed by said Company by the name of H. W. McColley, Treasurer of the Junction Breakwater R. R. Co. and sent to Baltimore by a committee of the Directors of said Company duly appointed, and was there presented for acceptance and accepted by Stephen Broadbent Senior, one of the members of the aforesaid firm of France, Broadbent Co. endorsing the acceptance of the firm upon the face thereof thus: "Accepted, France, Broadbent, Co." That the said firm of France, Broadbent Co. was composed of the above named Richard France and Stephen Broadbent Senior, Stephen Broadbent Junior, son of said Stephen, and William C. France, son of said Richard. That the said bill or draft was after said acceptance negotiated by the said defendant with the said Stephen Broadbent Senior, who afterward endorsed and negotiated the same with the said plaintiff. That afterward the said draft or bill was duly presented for payment in Baltimore aforesaid and payment demanded and refused, of which presentment, demand and refusal the defendants had due notice.
If upon the foregoing statement of facts and the record in this case, the court shall be of opinion that the plaintiff is entitled to recover, then judgment to be rendered for said plaintiff for the amount of said bill or draft, with interest thereon from the time of its maturity, besides the *Page 291 
costs of protest, but if they should be of a contrary opinion, then judgment to be rendered for the defendant.
The original draft upon which this suit is founded, together with the notarial certificate of protest, as also the pleadings filed in the cause, are to be produced and considered as part of this case stated. The foregoing description of the instrument of writing called a draft or bill of exchange, is not to conclude the defendant, or affect any grounds of objection they may take to its legal form or effect. That the said firm of France, Broadbent Co. had dissolved partnership and had no place of business in Baltimore aforesaid, at the time when the said draft or bill of exchange became due and payable, and that presentment for payment thereof by the said notary, was made at the respective places of residence of the members of the said firm. And that the said Richard France in the said act of Assembly mentioned, is the same person of that name described as one of the co-partners in the said firm of France, Broadbent Co. and that the lottery business under the grant in the said act mentioned, was held and conducted by the said France and his said co-partners under the name and firm aforesaid.
Booth, for the plaintiff. The legal question presented in the case is whether the instrument on which the action was founded, is a bill of exchange in its true and technical sense, and was negotiable as such. We shall contend that it was, for although payable by the terms of it out of a particular fund designated in it, nevertheless it was payable at all events after the eighteen months had elapsed from the date of it, and that constituted it a negotiable bill of exchange in the true and proper meaning of that term, and therefore an action of assumpsit would lie upon it as such, at the suit of the endorsee, the plaintiff, against the company as the drawer of it. Pars. onNotes and Bills, 42, 44. Macleed v. Snee, 2 Strange 762.Kelly v. City of Brooklyn, 4 Hill 263. Knox v.Reiside, 1 Miles 294. Haussoullier v. Hartsinck, 7T. R. 733. Knox v. Reiside, 2 Whart. 233. *Page 292 Wells v. Brigham, 6 Cush, 6. Fancourt v. Thorn, 58 E. C,L. R. 310. The qualification added to it was merely a direction as to the particular or designated fund out of which the drawers and acceptors were to be reimbursed for the acceptance and payment of it, but by their acceptance of it, they became absolutely bound to pay it at all events, even although the fund failed, and they should not be able to obtain reimbursement from it.
T. F. Bayard for the defendants. To constitute in law a valid bill of exchange and make it negotiable, the money ordered to be paid, must be payable at all events, and not be dependent upon any contingency, either with regard to the event, or with regard to the fund out of which the payment is to be made, or the parties by or to whom the payment is to be made. Ch. on Bills 134. Byles onBills with Notes by Sharswood m. p. 69. Add. on Contr. 435. But in this case the fund against which the bill was drawn, and out of which it was expressly made payable by the firm of France, Broadbent Co. the drawees and acceptors, was not only a particular fund, but it was an uncertain fund, part and parcel of a much larger sum semi-annually accruing and payable by France, the principal member of the firm, out of the business and profits of the firm, under a public statute of the State, into the treasury of the State; and for which payments, he had, pursuant to the requirements of the act, entered into a public bond with approved security to the State, and which could only be put in suit for. the recovery of the money upon it against him and his sureties in the special mode provided, for in another public statute, and which; general fund in point of fact, actually failed to be paid by him into the State Treasury in six months after the date of the bill of exchange; by reason of the absolute failure and insolvency of France and the firm in the business. And to show how utterly complete and absolute was the failure of France and the firm, and the destruction of both the general fund and the special appropriation of it against which the bill was drawn, it was only necessary to *Page 293 
refer to the fact which the subsequent legislation and public statutes of the State would show, that not only all the grants, liberties and privileges previously granted to him by the State in connection with the fund alluded to, were rescinded and revoked by the Legislature, as early as the 28th day of January, 1862, but afterward by a further act passed on the subject on the 24th of March, 1863, it made special provision for the criminal prosecution of him, or any other person as his assignee, who had attempted under the grant, to exercise any of those liberties and privileges since that revocation of it. 11 Vol. Del. Laws 594. Rev. Code 416. 12 Vol.Del. Laws 219, 354. It was consequently made payable not only out of a particular fund, but out of a public fund payable into the treasury of the State by him, and out of the same to the company, the drawers of the bill, but which the result had unfortunately proved for the company, to have been a pre-eminently contingent and precarious one, by the utter and absolute failure of it within less than six months from the date of the bill. Such an instrument drawn and made payable out of such a fund as this had thus been shown to be, was not, and could not be, a bill of exchange, or negotiable as such: Ch. onBills, 137, 138 in notes. Dawkes Wife v. Lord De Lorane, 3Wil. 207. Carlos v. Fancourt, 5 T. R. 482. Jenny v.Herle, 1 Strange 591. Williamson v. Bennett, 2 Campb.
417. Banbury v. Lisset et al. 2 Strange 1211. Story on Billsof Exchange, secs. 46, 47. Did the general credit of the parties constitute the basis of the draft in question, or rather was it not drawn expressly and exclusively on the credit of the particular and uncertain fund mentioned in it? And if so, then it was not a bill of exchange. Byles on Bills of Exchange 68, 71, 73. Atkinson v.Manks, 1 Cow. 691. Cook v. Satterlee, 6 Cow. 108.Reiside v. Knox, 2 Whart. 233. But this instrument was protested two days before the days of grace had expired, as appears by the minute of it by the notary endorsed in red ink upon the back of it. The instrument was drawn and dated July 2nd, 1860 at eighteen months, and it consequently matured with the days of grace *Page 294 
added, on the 5th day of January 1862, and yet it was presented for payment and protested on the 2nd day of January 1862. It also appears from the case stated, that it was drawn and endorsed by the drawer and was afterward accepted by the acceptors and negotiated by them. But when a bill of exchange is thus drawn and endorsed and accepted, and afterward comes into the possession of the acceptor, its negotiability is exhausted and destroyed, and it cannot be revived or restored again by the acceptors endorsing it to another. Byles on Bills ofExchange 236. Beede v. Real Estate Bank, 4 Pike 546. The endorsement of a bill of exchange by the drawer to the acceptor, will also have the same effect, and will extinguish and destroy it.Freakley v. Fox, 17 E. C. L. R. 342. Callow v.Lawrence, 3 M. S. 95. Bartrum v. Caddy. 36 E. C. L.R. 138. So too, when a bill of exchange is once paid by the acceptor, it is functus officio at common law. Ch. onBills 249. Beck v. Robley 1 H. Blacks. 89. There was another reason, and although the last which he should assign, it was by no means the least reason, why the instrument in question was not a bill of exchange, and that was because it was executed under and bore the impress of the public or corporate seal of the railroad company, and was consequently an instrument under seal, and, therefore, it could not be a bill of exchange, and no action of assumpsit could be maintained upon it. It was, for all the reasons which he had stated, clearly an irregular, ambiguous and even a non-descript instrument, and was, in fine, anything but a bill of exchange.
Comegys, for the plaintiff. All which follows the preceding portion of the instrument, which is in form strictly a bill of exchange, amounts to nothing more than a direction as to how the acceptors should secure and reimburse themselves for the acceptance of it, and the case therefore, falls exactly within the principle ruled and established in the cases of Macleed v. Snee, 2 Strange 52 and Kelly v. City, of Brooklyn, 4 Hill 263. No case had *Page 295 
ever been decided that the bill was not negotiable, because it was drawn on a particular fund, unless where it was clearly made payable by its terms, out of the designated fund. That is the extent, and the utmost extent too, to which the cases of Knox v. Reiside, 1Miles 294 and of Reiside v. Knox, 2 Whart. 233, go. The latter did not reverse the former on the ground that the bill in that case was payable out of a particular fund, but because it was drawn on a Government officer of the United States, and the principle was not only a sound and wise one, but was well settled and sustained by other decisions of a similar character. Kinney v. Lee, 10 Texas
155. 19 Penna. 200. It had been said on the other side, however, that inasmuch as the bill of exchange in question came to the hands of the acceptors after the acceptance of it by them, its negotiability was thereby destroyed, and it could not be revived against the drawer or an endorser by their subsequent endorsement of it. But the answer to that is, that it was drawn on and accepted by the firm of France, Broadbent Co., and that it was taken up by Broadbent alone, and was thereupon endorsed by him alone, and that distinction and substantial difference would, therefore, take the case out of the operation of that principle. As to the objection that it is a sealed instrument, the idea originally was that a corporation could bind itself only by its seal. But that idea is now antiquated and is no longer entertained, in this country at least. The bill in question, however, is not in the form of a sealed instrument, because it contains notestimonium, as such, and no recital of, and no reference whatever to, the seal of the company. It does not even state that the seal of the company had been affixed to it, nor does it even purport to have been executed as a sealed instrument, and but for the fact that we find the impression of the seal on the margin of it, we should be warranted in saying that the seal had never touched it and had never been thought of when it was drawn and transmitted by the drawer of it to Baltimore. It does not *Page 296 
state by whom or by whose authority it was impressed upon it, and had it been the design to make a sealed instrument of it, it would and should have been signed by the President of the company, terminating in the usual form of testimonium in such cases, and stated that it had been thereto affixed at least, by his direction and authority; for the Treasurer of the Company was not the legal custodian or keeper of its seal, was not entitled to the possession of it, and had no right as such officer to affix it to any instrument. It should therefore be considered and regarded under the circumstances as placed there without authority and by a mistake of his merely, and that it could not in law destroy the effect and negotiability of the very instrument which he designed to draw, and which he must have known at the time would have, in all probability, to be negotiated in a short time in order to obtain the money elsewhere upon it.
Gilpin, Chief Justice, delivered the opinion of the Court. Considering the third ground of defence taken by the defendant as fatal to the plaintiff's right to recover in this action, I do not propose to express any opinion on the question as to whether the draft, which is the subject of controversy, was or not, according to its terms and meaning, made payable out of a particular fund, nor the other question as to the legal effect of the draft's having been held by Stephen Broadbent, one of the acceptors as an indorsee. Much has been said and well said on this point, but for the reason just suggested, I do not deem it at all material to pass upon them.
By agreement of the parties the original draft is made a part of the case stated, and upon examination of the draft we find that the corporate seal of the company is affixed or impressed upon the paper upon the left of the signature of H. W. McColley, Treasurer of the Company. The usual terms indicating the affixing of the seal, are not found at the end of the draft — they are omitted altogether. If the case had been tried at the bar of the *Page 297 
Superior Court before a jury, the fact of, whether the seal had been rightfully affixed to the draft, might have been controverted, notwithstanding the well established legal presumption arising from the presence of the corporate seal affixed to the instrument produced, that it was placed there by competent authority; the rule being, that, when the common seal of a corporation appears to be affixed to an instrument and the signature of a proper officer is proved or admitted, the Court is bound to presume that the officer did not exceed his authority, and the seal itself is prima facie
evidence that it was affixed by proper authority; and the burden of showing that it is wrongfully there rests upon the party objecting to it. Lovit v. The Steam Saw Mill Association, 6 Paige 54.The President, Managers and Company of the Berks and DauphinTurnpike Road v. Myers, 6 Serg. Rawle 12. Baptist Churchv. Mulford, 3 Halst. (N. J.) 183. The case of St. Mary'sChurch, 7 Serg. Rawle 530. The proprietors of the Mill DamFoundry v. Hovey, 21 Pick. 417. Phillips v. Coffee, 17Illinois 154. Johnson v. Crawley, 25 Ohio 316.Potter et al. v. Androscoggins Kennebec R. R. Company, 37Maine 316.
But in this case, the question as to whether the seal is rightfully or wrongfully on the draft, cannot be raised. For the parties have made the seal itself, just as much as the body of the draft or the signature of the Treasurer, a part of the case stated, without suggesting the slightest doubt of it being there properly. Indeed, it is alleged in the case stated that the draft, after it was indorsed by H. W. McColley, Treasurer of the Junction and Breakwater Railroad Company, was sent by a duly appointed committee of said company to Baltimore for acceptance, and was there accepted by Prance, Broadbent Co. It passed from the hands of the Treasurer to the committee, (of course with the seal on it — for it does not appear that it ever afterward returned to the hands of the Treasurer) — was sent by them to Baltimore, was accepted by the drawees, was negotiated by the company, and is *Page 298 
now produced by the plaintiff with the seal on it and made a part of the case stated. All this amounts to an admission that the seal was placed on the draft rightfully and not surreptitiously, improperly or fraudulently. But aside from this admission, the presence of the seal on the draft, in the absence of evidence or statement impeaching its correctness, concludes the question here, as to its having been affixed by proper authority.
The more approved mode of executing a deed by a corporation, is to conclude the instrument by saying, "In testimony whereof the common seal of the said corporation is hereinto affixed." But this is not necessary to the validity of the instrument. Nor is it necessary to name or refer to the seal at all. Mill Dam Foundry v. Hovey, 21Pick. 417. Godard's Case, 5 Co. R. 5. Com. Dig.Fait, a 2. 2 Serg. Rawle R. 504. In the case of Mill DamFoundry v. Hovey, the instrument concluded in the words. "In witness whereof we have hereunto set our hands;" and the seal consisted of a wafer and a small bit of paper stamped with a common desk seal of a merchant. And it was contended that this was not the seal of the corporation, the words of in testimonium being, "we have hereunto set our hands" merely. But the Court thought otherwise, and decided that it was the deed of the parties, declaring that it had been settled that words indicating that the parties had affixed their seals, were not absolutely necessary.
The question reserved for the decision of this Court is this: whether the instrument of writing sued on and described as a bill of Exchange, does in fact and in law constitute a valid bill of exchange, so as to entitle the present indorsee and holder, William C. Conine, the plaintiff, to sue and recover upon it as such. In other words, is it transferable by mere indorsement, so as to entitle the holder by force of such indorsement, to maintain an action upon it, in his own name.
At the common law, choses in action could not be assigned, so as to give the assignee a right of action in his *Page 299 
own name. Bills of Exchange, however, have always constituted an exception to this rule.
The origin of the latter is involved in some obscurity. It is very questionable whether they were known to the nations of antiquity. But whether they were invented by the Jews and Lombards, (as some writers have supposed) during the thirteenth century, and after their banishment, in order the more readily to draw their effects out of France and England; or by the Gibelins, upon their expulsion from Italy by the Guelphs, in order to avoid confiscation of their effects by their enemies, certain it is that we find them to have been in use among the maritime and commercial communities, inhabiting the shores of the Mediterranean as early as the fourteenth century; from which region, it is most probable, they were introduced into England about the year 1381.
The facilities which they afforded for the safe transmission of money, or values, from one country to another, soon brought them into general use among merchants; and the use of them becoming an established custom, it is believed they received judicial recognition at a very early day, although no authentic decision in regard to the custom, can be found prior to the time of James the First, 1603. The first case of which we have any knowledge, is that of Marten v.Boure reported Cro. Jac. 6 — 7. The declaration in the case, which is set out in the report, describes the cause of action as a bill of Exchange, "signed with his HAND secundum usummercatorum." And from that day to this, no case can be found in the books, of a bill of exchange with a seal affixed to it.
The most solemn and authentic act, as matter of contract, for finally and conclusively binding men to the observance of good faith toward each other, known to the civil law, was called a stipulation; it was entered into before the civil magistrate upon questions and answers, carefully propounded and taken in writing, intended to explain the nature and character of the transaction, and to show that there was no surprise, and that the contract of *Page 300 
the parties was their maturely considered and deliberate act. It could only be impeached by fraud.
Deeds, by the common law, are strikingly analogous to the ancient stipulation of the Civilians. The ancient forms and ceremonies prescribed by the common law, for proper authentication and establishment of a deed, were writing, sealing and delivery, and if the parties were illiterate, also reading of the instrument, all indicating a solemn and deliberate act, intended to be final and conclusive between the parties. Sealing was an essential element though signing was not.
Authentic history informs us, that seals come down to us from the most remote antiquity, and were originally derived from the nations of the far East. The scriptures declare that the "writing that is written in the King's name, and sealed with the King's seal, can no man reverse." Writings under seal constituted part of the formalities of a Jewish purchase of land. "And I bought the field of Hanameel, and weighed him the money, and subscribed the evidence and sealed it, and took witnesses." See Jeremiah, chap. 32. 1 Kings, chap. 21. Esther, chap. 8. Daniel, chap. 8, 9.
Seals, however, did not come into general use in England until after, or about the time of, the conquest; indeed, prior to that time, they were almost entirely unknown to our English ancestors; and, probably, the most ancient authentic sealed document in England, is the charter granted by Edward the Confessor to Westminister Abbey. A. D. 1017.
Deeds or sealed instruments, are not only of much higher antiquity than bills of exchange, but they are of a totally different origin. They cannot be said to be made secundum usum mercatorum, since they find their recognition and validity in the more ancient rules of the common law. On the other hand, bills of exchange find their origin and sanction in the usage and custom of merchants, the lexmercatoria, a particular or peculiar system, which, being in the interest of commerce, became at length gradually *Page 301 
ingrafted into, and established as a part of the common law itself. By the common law, contracts are distinguished into two kinds, — contracts under seal, which are specialties, and contracts not under seal, which are simple contracts. It can hardly be necessary to say, that a bill of exchange is not a specialty, for no contract, by that law, is held to be a specialty, unless it be under seal, or a matter of record. But notwithstanding a bill of exchange is only a simple contract, it nevertheless differs from other simple contracts in two very important particulars, namely, its negotiability, and its presumed valuable consideration. At common law no chose in action was assignable, until bills of exchange became by force of the custom of merchants, the exception to the general rule. Notes were made assignable in 1704 by the statute 3 and 4 Anne. Bonds and specialties, as well as notes, are made assignable by our statute; — the last by simple indorsement, the two former "under hand and seal and before at least two credible witnesses." Chap. 63, sec. 8. Revised Statutes. If a specialty had been assignable by mere indorsement, where would have been the necessity for this statutory provision? The distinction between a bill of exchange and a specialty, is found noticed in almost all elementary works on contracts — Chitty on Contracts 3, 4.Chitty on Bills 12, 13. Story on Bills, sec. 16. 2Blac. Com. 465, 466. All contracts under seal are specialties, sealing and delivery being the particular form and ceremony which alter the nature and operation of the agreement. Forms, consecrated by time and usage, become substance. The seal is substance and changes the nature and operation of the contract. It seems to me therefore, that the question which I have been considering, is settled upon principle against the plaintiff. But however this may be, it has been held as settled upon authority for more than thirty years past.
In the case of Warren v. Lynch, 5 Johns. 239, it was conceded by counsel on both sides, and by the court, Chancellor Kent, then Chief Justice, presiding and delivering the opinion, that a sealed note is not negotiable. *Page 302 
In the case of Clark v. The Farmers' Woolen Manufacturing Companyof Benton, 15 Wendell R. 256, it was held by the Supreme Court of the State of New York, first, that a note for the payment of money under seal, though in all other respects like a promissory note, was not negotiable, and that an action could not be maintained upon it in the name of a person to whom it had been transferred; secondly, that the effect of affixing the seal of a corporation to a contract, is the same as when a seal is affixed to the contract of an individual; it renders the instrument a specialty.
I am not aware that this decision has ever been overruled, or even, doubted.
We are therefore of opinion that the plaintiff is not entitled to recover on this action.