## ORDER FOR PAYMENT OUT OF SUM DUE CONTRACTOR.

Circuit Court of Cuyahoga County.

HENRY SOEDER v. THE CITY OF CLEVELAND ET AL.

Decided, March 20, 1902.

*Assignments—Intent of Parties Governs—That the Fund out of Which an Order is to be Paid is Derived from Several Sources Not Material.*

1. In determining whether an order, given by a contractor for the payment of a certain sum out of the amount due or to become due to him upon his contract is an assignment *pro tanto* of money in the hands of the drawee, the intent of the drawer and drawee is the determining factor.

2. Where orders are given by a contractor to parties who have furnished labor and materials for the performance of the particular work which he was under contract to perform for the drawee, there is a strong presumption that the orders so given were understood to be payable only to the extent that there were funds in the hands of the drawee which would become due the drawer.

3. The fact that the fund, from which a contractor directs the drawee to pay certain orders, consists of the amounts due him upon four several and distinct contracts will not prevent such orders being regarded as assignments *pro tanto* when such was the evident intention of the parties.

*Solders & Tilden,* for plaintiff.
*Beacom, Baker & Carey,* contra.

MARVIN, J.; CALDWELL, J., and HALE, J., concur.

This case was tried in this court on appeal. The facts are that one C. J. Hoffman entered into four several contracts with the city of Cleveland for the improvements of four streets in the city—Willett, West Cemetery, Wade Park, and West Clinton streets.

After proceeding with the work a considerable time, finding himself unable to carry out a complete contract, he assigned all his interest in the contracts to Henry Soeder. At the time of such assignment there were assignments which had been made

for the payment of work to be done under the contracts, to be made under estimate of the engineering department of the city.

A considerable amount of work on the several contracts had been performed for which payment had not been made at the time of the assignment of Hoffman to Soeder. Prior to the time of the assignment of the contract made to Soeder various accounts had been made out by parties who had furnished material and labor, and it is said that they became liens or prior charges upon the fund, and as to that no question is here made. But in addition to that orders had been given by Hoffman upon the director of accounts of the city for the payment of certain sums, and the questions here are with reference to such orders. These orders not having been accepted or paid at the time of the assignment of the contracts by Hoffman to Soeder, the question to be determined is whether they amount to an assignment for the amounts for which they were drawn, that is, an assignment of that part of the money owing to Hoffman upon the contract. One of these was made to one Henry C. Heman, and reads:

"April 1, 1899.

"DIRECTOR OF ACCOUNTS,

"*Dear Sir:* Please give Henry C. Heman voucher for $119.20 for labor and material furnished by him in making the approach to Willett Street Viaduct, and charge same against my next estimate and oblige,

"Yours truly,
"C. J. HOFFMAN."

On the part of Heman it is insisted that this is surely an assignment of $119.20 out of the moneys which would be otherwise payable at the next estimate to Hoffman.

The others are different from the one that has just been read, and each of the several other orders are practically the same. I read the one to B. & N. Rich because the reading of this latter will do for the reading of all the orders other than that of Heman:

CLEVELAND, OHIO, January 19, 1899.

MR. ROSSITER, Director of Accounts,
          City of Cleveland,

Please pay to bearer, B. & N. Rich Co. ($141.35), one hundred and forty-one and 35/100 dollars, and charge the same to any estimate which may become due me.

Yours respectfully,<br>C. J. HOFFMAN.

Remembering that there are four several contracts that Hoffman had with the city, it is said that in any event this was not such a direction to pay out of a particular fund in any wise as to make this an assignment of any part of the money that would be due Hoffman upon the estimate.

The authorities are uniform that, where an order is made for payment out of a particular fund, such an order is an assignment *pro tanto* of money in the hands of the drawee to the payee of the order.

They are equally uniform that where the order is for the payment of a certain sum with the designation of a fund out of which a drawee may reimburse himself, and not an assignment of an amount to be taken out of the fund, except where the bill is for the entire amount owing by the drawee to the payee, such order is not an assignment.

The authorities are uniform in this, that the *intent* of the parties, the drawee and the payee, is to determine whether there is an assignment, an equitable assignment of so much of the fund as is necessary to pay the order, or that it shall be a bill of exchange so that, if accepted by the drawee, it would be payable at all events. A large number of cases have been examined: 62 O. S., 637; 45 Wis., 403; 42 Ind., 527; 44 Me., 496; 263 Mass., 6, and a case in 3 Nisi Prius Reports, 282, opinion by Judge Smith of the Superior Court of Cincinnati, and others we have examined, all make it clear that in some of the cases orders very similar to those of Rich's here, are held to be assignments. The *intention* of the drawee and drawer must govern in each instance.

If these several orders are to be treated as bills of exchange, then an acceptance, unqualified, of either of these would have held the drawee to the payment of the amount named in the order. If they are assignments, an acceptance would only have

required the payment of such as there was money applicable to the payment thereof.

In determining the *intention* of the parties here, one can not overlook the fact that Hoffman was under contract for the performance of particular work, for which he was to receive money, and that the parties to whom the orders were given were those who had furnished material or labor for the performance of that work; the conclusion seems almost irresistible that they must have understood, not that these orders, or most of them, were to be absolutely payable at all events, but only to the extent that a particular fund that would otherwise be payable to Hoffman should be in the hands of the drawee.

It is said, there being four contracts here, that in such an order as this drawn to Rich and others which are like it, there could not be a particular fund out of which it was necessary to be paid because there would be four funds. It is conceded as to Heman that that might be different, as it was for work done and labor performed in making the approach to the Willett Street Viaduct. But, as to any of these, if accepted, is it possible that the acceptor would have been liable for the amount? Could it have been so understood by the drawee and the drawer? One can hardly doubt that it must have been understood that nothing was to have been paid upon these except out of the fund which would otherwise be payable to Hoffman. This is strengthened by the fact that the orders were made upon municipal authorities who would have no right to bind the municipality by accepting such orders, beyond the amount which would otherwise be payable to Hoffman, and, in this connection, attention is called to the case of *Reeside* v. *Knox et al*, 2 Wharton, 233.

An order was made upon the Postmaster-General of the United States, which reads:

"*Sir:* On the first day of January, 1836, pay to my order $5,000, for value received, and charge the same to my account, for transporting the U. S. mail, and oblige,

"Your Friend, J. R."

On page 238, in the opinion, Judge Gibson uses this language:

"The officer, being the public agent, would not have been liable on an absolute acceptance; and the government itself

would not have been liable, for it gave him no authority to bind it. The public officers may, doubtless, draw or receive bills to facilitate the business of their departments; but they would transcend their power, did they attempt to pledge the responsibility of the government as a merchant or a banker in the money market.''

Now the reasoning there seems fairly applicable to this case. We should have no trouble with this case at all if the case of *Little* v. *Carran et al* had been disposed of. It is found in 40 O. S., 397, and is a suit brought by Little against Carran as endorser of a draft which reads:

"CLEVELAND, August 13, 1873.

"$1,125. ·

"On the 8th day of April, 1874, pay to the order of T. J. Carran, Esq., eleven hundred and twenty-five dollars and charge to my quarter's salary as city official solicitor, due at that time, demand and protest waived. Value received and place to account of W. C. Bunts.

"To S. T. EVERETT, ESQ., *City Treasurer.*

"*Endorsed*: THOMAS J. CARRAN.''

Wm. C. Bunts died before April 8th, at which time this draft was to have been paid, and at which time the amount was to have been due him as solicitor of the city of Cleveland. Carran had endorsed this order to Little and Little brought suit upon it against Carran; and it was held in that case, by the Supreme Court, Judge McCauley delivering the opinion, that that was a *bill and not an assignment* of the amount of $1,125 out of the salary of Bunts.

As was said in the argument here it seems never to have been cited in any reported case.

In addition to that, stress is laid in the opinion upon the language used in the order, "demand and protest waived." The court say that it was clear that the drawer, Mr. Bunts, understood that he was himself liable for this as upon a bill, if it should not be paid by the drawee. It was not an assignment.

To the extent that the decision in this case is governed by the words "demand and protest waived," it differs from the case we have here.

We hold that these several orders each constitutes an assignment of the fund to the extent necessary to pay the several orders, and that they are not bills or to be treated as such.

---

## COSTS IN UNSUCCESSFUL APPROPRIATION PROCEEDING.